# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

ROGER CHENIER

CRIMINAL ACTION

NO. 22-80-JWD-EWD

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss the Indictment* ("*Motion to Dismiss*" or *"Motion"*) filed by Defendant Roger Chenier ("Defendant" or "Chenier"). (Doc. 19.) The Government opposed the *Motion* (Doc. 21) before the Court stayed the case pending a decision from the Supreme Court in *United States v. Rahimi*, No. 22-915 (Doc. 25), and then pending a decision from the Fifth Circuit in *United States v. Diaz*, No. 23-50452 (Doc. 28). After *Diaz* was decided, the Government submitted an additional opposition. (Doc. 36.) Defendant filed a reply. (Doc. 41.) The Government filed a sur-reply. (Doc. 42.) Oral argument was scheduled for July 16, 2025, but the Court finds that it is no longer necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's *Motion* is denied.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Defendant is charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) The predicates for this offense are Defendant's prior convictions of possession of cocaine and possession of a firearm with a controlled dangerous substance in 1999, (Doc. 36-3 at 2–3), and attempted possession of a firearm by a convicted felon in 2013 (Doc. 36-6 at 1).

## II.    SECOND AMENDMENT STANDARD

The felon-in-possession statute prohibits

> any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year[,] . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

Because § 922(g)(1) affects the Second Amendment right to "keep and bear Arms," the Court must conduct a Second Amendment analysis to determine the constitutionality of its application. *United States v. Diaz*, 116 F.4th 458, 462 (5th Cir. 2024) (quoting U.S. Const. amend. II).

The Supreme Court established the Second Amendment standard in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022).

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n.10 (1961)). "[T]his historical inquiry that courts must conduct will often involve reasoning by analogy . . . ." *Id.* at 28. The question of "whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.' " *Id.* at 28–29 (citing C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)). This involves finding "a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30.

2

In *United States v. Rahimi*, the Supreme Court further clarified the "historical analogue" requirement. 602 U.S. 680, 691 (2024). "These precedents were not meant to suggest a law trapped in amber." *Id.* "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id.* at 692. The Court found that 18 U.S.C. 922(g)(8) was constitutional on its face and as applied to Rahimi, because our country's "firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 690.

The Fifth Circuit applied this framework to 18 U.S.C. § 922(g)(1) in *Diaz*. 116 F.4th 458. *Diaz* considered the defendant's felon status in the second step of the *Bruen* analysis, collapsing the inquiry "into one question: whether the law is consistent with our Nation's history of firearm regulation." *Id.* at 467 (citing *Rahimi*, 602 U.S. at 692). The Fifth Circuit held "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1) . . . ." *Id.* Thus, the government bears the burden to demonstrate that the application of § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen*, 597 U.S. at 24) (internal quotation marks omitted).

To determine if a historical law is relevantly similar, the Fifth Circuit has said to focus "on the *why* and *how* [and] ascertain whether the challenged regulation 'impose[s] a comparable burden on the right of armed self-defense' to that imposed by a historically recognized regulation." *United States v. Quiroz*, 125 F.4th 713, 718 (5th Cir. 2025) (quoting *Bruen*, 597 U.S. at 29). In *Diaz*, the Fifth Circuit held that § 922(g)(1)'s justification (the "why") was "relevantly similar" to the examples of punishing felonies with death: "to deter violence and lawlessness." *Diaz*, 116 F.4th at 469. The Fifth Circuit also reasoned that the method by which § 922(g)(1) reaches this goal (the "how")—permanent disarmament—was consistent with historical methods because if felonies

3

were historically punished with death, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Id.*

The holding in *Diaz* was not a blanket statement that all felonies may serve as a constitutional predicate offense to § 922(g)(1), but only those that "fit[] within this tradition of serious and permanent punishment[,]" such as death or permanent estate forfeiture. *Id.* at 470. *Diaz* addressed a predicate conviction of theft, finding that there was a history and tradition of severe punishment for theft by looking to the historic laws of three states: Massachusetts, New York, and Virginia. *Id.* at 468. Further, the Fifth Circuit found that the historical "going armed" and forfeiture of weapons laws, which "punished 'those who had menaced others with firearms[]' . . . provide[d] for permanent arms forfeiture as a penalty." *Id.* at 470–71 (citing *Rahimi*, 602 U.S. at 697; Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 53). "Imposing permanent disarmament as a punishment is also within our Nation's history and tradition." *Id.* at 471. The Fifth Circuit held that " '[t]aken together,' laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1) to Diaz." *Id.* (quoting *Rahimi*, 602 U.S. at 698).

Likewise, in *United States v. Bullock*, the Fifth Circuit rejected a § 922(g)(1) challenge by a defendant with prior convictions for aggravated assault and manslaughter. 123 F.4th 183, 184–85 (5th Cir. 2024) (internal quotation marks omitted). "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Id.* at 185 (quoting *Rahimi*, 602 U.S. at 693). "The historical record demonstrates 'that legislatures have the power to prohibit dangerous people from possessing guns.'" *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting)); *see also Folajtar v. Attorney Gen.*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting) ("The historical touchstone

4

is danger[.]")). The Fifth Circuit reasoned that "[t]here can be no doubt that manslaughter and aggravated assault in this context constitute dangerous and violent crimes." *Id.* (citation omitted). The appellate court looked to the "historical tradition of severely punishing individuals convicted of homicide, a prototypical common law felony considered a 'very dangerous offense[, ]'" *id.* (citation omitted), and to the fact that the defendant's conduct was "'relevantly similar' to, and arguably more dangerous than, the 'prototypical affray [which] involved fighting in public,' the precursor to the 'going armed' laws punishable by arms forfeiture[,]" *id.* (quoting *Rahimi*, 602 U.S. at 697).

More recently, in *Quiroz*, the Fifth Circuit addressed 18 U.S.C. § 922(n), possession of a firearm while under indictment for a felony. 125 F.4th at 715. Quiroz was under indictment for burglary and bail jumping. *Id.* The Fifth Circuit analyzed the history of burglary as a capital offense, finding a tradition because seven states at the founding deemed burglary a capital offense. *Id.* at 724. It further said that there need not be unanimity between the states to show history and tradition. *Id.* at 725.

Ultimately, neither the Supreme Court nor the Fifth Circuit has set a minimum number of historic laws required to establish a history and tradition of serious and permanent punishment. In *Diaz*, the Fifth Circuit found a history and tradition looking at the laws of only three states. 116 F.4th at 468. In *Quiroz*, again, it was seven. 125 F.4th at 724. Thus, it appears that there is no brightline rule for determining how many states' laws are needed to establish a tradition, but *Diaz* and *Quiroz* provide guidance.

### III.    DISCUSSION

### A.  Parties' Arguments

#### i.    *Motion to Dismiss* (Doc. 19) and *First Opposition* (Doc. 21)

On October 25, 2023, Defendant moved to dismiss the indictment on the grounds that § 922(g)(1) is unconstitutional on its face and as applied to him. (Doc. 19.) He argued that, under the Supreme Court's new approach to the Second Amendment challenges, as set forth in *Bruen*, his conduct was protected by the Second Amendment and § 922(g)(1) did not "comport[] with the Nation's historical tradition of firearms regulation." (Doc. 19-1 at 2–4.)

The Government opposed the *Motion*. (Doc. 21.) It argued that Fifth Circuit caselaw on § 922(g)(1) was still binding post-*Bruen*. (*Id.* at 4–11.) Even if the Court found that Fifth Circuit precedent was no longer binding in the wake of *Bruen*, the Government argued that the disarmament of individuals convicted of felonies fits within the historical tradition of firearm regulation. (*Id.* at 11–20.)

#### ii.    *Second Opposition* (Doc. 36)

After the Fifth Circuit's decision in *Diaz*, the Court allowed the parties to submit additional briefing, with the Government filing the first brief. (Doc. 29.)

The Government acknowledges that *Diaz* "held that felony status has no bearing on the first step of the *Bruen* analysis . . . ." (Doc. 36 at 5.) It maintains that the Fifth Circuit wrongly decided this issue and that felons are not covered by the text of the Second Amendment. (*Id.*)

As to Step Two of the *Bruen* analysis, the Government argues that Defendant's facial constitutional challenge is foreclosed by *Diaz*. (*Id.* at 6 (citing *Diaz*, 116 F.4th at 471–72.) Regarding the as-applied challenge, it says that the punishments for the historical analogues to

Defendant's prior convictions were death and estate forfeiture, thus "the disarmament of defendant is permissible." (*Id.*)

First, the Government analogizes Defendant's prior convictions for possession of cocaine and possession of a firearm with cocaine to the founding era crimes of "possession of and trafficking in contraband." (*Id.*)

> For example, Virginia punished receipt of a stolen horse with death. 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature* 130 (1819) (1748 law). New York punished receiving a dead body with knowledge that it had been unlawfully disinterred with up to five years in state prison. Ellis Lewis, *An Abridgment of the Criminal Law of the United States* 226 (1847) (1819 law). In Massachusetts, the printing of obscene books was punishable by up to five years in the state prison. *Id.* at 480. The Second Congress provided for the death penalty for theft of the mail. An Act to Establish the Post-Office and Post Roads Within the United States, § 17, 1 Stat. 232, 237 (1792). And both federal and state laws punished counterfeiting and forgery of public securities with death or estate forfeiture. *See* An Act for the Punishment of Certain Crimes Against the United States, § 14, 1 Stat. 112, 115 (1790); 2 Laws of the State of New York Passed at the Sessions of the Legislature (1785-1788) at 260-61 (1886) (1786 law); 9 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature* 302 (1821) (1777 law).

(*Id.* at 6–7.)

The Government argues that these historical laws "support[] the disarmament of those convicted of possessing illicit drugs, particularly those convicted of possessing a firearm with illegal drugs." (*Id.* at 7.) The historical laws and § 922(g)(1) "as applied to drug offenders impose substantial punishment for the possession of items deemed injurious to the public good." (*Id.*) Looking at the "how" behind these laws, the Government asserts that permanent disarmament does not go beyond the historical severe and permanent punishment for analogous crimes. (*Id.*)

The Government says that although "there were no founding-era laws prohibiting possession of dangerous drugs, that is because drug abuse was not a problem at the time of the founding." (*Id.* at 8 (citing *United States v. Connelly*, 117 F.4th 269, 278 (5th Cir. 2024)).) This

does not prevent the Court from finding an analogous historical law, because *Bruen* and *Rahimi* do not require a historical twin. (*Id.* at 8–9 (citing *Bruen*, 597 U.S. at 24; *Rahimi*, 602 U.S. at 691).) The laws cited above show that "the disarmament of convicted drug possessors fits neatly within that tradition." (*Id.* at 10 (cleaned up).) The Government cites several district court cases that have rejected as-applied challenges to § 922(g)(1) based on drug possession convictions. (*Id.* (citing *United States v. Garner*, No. 24-112-1, 2024 WL 4820794 (W.D. La. Nov. 18, 2024); *United States v. Landrum*, No. 24-63, 2024 WL 4806486, at *2 (N.D. Miss. Nov. 15, 2024); *United States v. Patino*, No. 24-60, 2024 WL 5010146 (W.D. Tex. Nov. 26, 2024); *United States v. Wilson*, 22-238, 2024 WL 4436637 (E.D. La. Oct. 6, 2024); *United States v. Carter*, No. 23-22, 2024 WL 4723236 (E.D. La. Nov. 8, 2024)).)

The Government also argues that there is "a historical tradition of disarming those who are dangerous." (*Id.* at 11.) It says that § 922(g)(1), when applied "to dangerous felons is analogous to the historical surety and going armed laws discussed in *Rahimi*." (*Id.*) Defendant's possession of a controlled substance posed a danger to the general public because drug use can lead to violence, and drug dealing is often dangerous. (*Id.* at 12–13.)

> The danger posed by defendant is magnified because, on two occasions, he possessed a firearm with drugs. In 1999, defendant pled guilty to possession of a firearm with cocaine. In 2013, he possessed a gun and marijuana, ultimately resulting in his conviction for attempted possession of a firearm by a convicted felon. *See Bullock*, 123 F.4th at 185 (considering facts underlying predicate convictions). Like burglary, possessing a gun with illegal drugs is inherently dangerous. As the Supreme Court has recognized, "drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993). That's why Louisiana prohibits the possession of firearms along with illegal drugs—to "prevent[] drug-related violence." *State v. Blanchard*, 776 So.2d 1165, 1173 (La. 2001). Additionally, the facts underlying the 1999 convictions corroborate defendant's dangerousness. Defendant admitted to police that he had obtained the sawed-off shotgun he possessed for the express purpose of committing an armed robbery. Att. G at 26. All things considered, defendant is rightly considered to be a threat to public safety, and his disarmament is therefore consistent with the

historical tradition of taking "guns away from those perceived to be dangerous." *See Connelly*, 117 F.4th at 278.

(*Id.* at 13–14.)

The Government asserts that permanent disarmament is a valid burden on the Second Amendment right, because it fits within the history and tradition of disarming those who pose a danger to society. (*Id.* at 14.) "[B]ecause defendant's disarmament is based on judicial findings that he committed felonies that pose an inherent danger of violence, it 'matches the surety and going armed laws, which involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon.' " (*Id.* (quoting *Rahimi*, 602 U.S. at 699).)

### iii. *Reply* (Doc. 41)

Defendant argues that he is protected by the Second Amendment, as held in *Diaz*. (Doc. 41 at 4.) Moving to Step Two of the *Bruen* analysis, Defendant argues "that only [Defendant]'s prior conviction for Possession of Cocaine is at issue under the *Diaz* analysis." (*Id.* at 5.) He says the Government is wrong, and the proposed historical analogues do not support the application of § 922(g)(1). (*Id.*)

Defendant asserts that *United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024) forecloses the application of § 922(g)(1) when the predicate conviction is drug possession. (*Id.* at 6.) In *Connelly*, a case dealing with 18 U.S.C. § 922(g)(3), the Fifth Circuit examined historical laws relating to the regulation of guns owned by an unlawful user of a controlled substance. (*Id.* (citing *Connelly*, 117 F.4th at 279).) The court held "[t]here was very little regulation of drugs (related to firearm possession or otherwise) until the late 19th century." (*Id.* (quoting *Connelly*, 117 F.4th at 279) (internal quotation marks omitted).) Further, he argues that laws criminalizing drug possession were not common until the early 1900s. (*Id.* (quoting *United States v. Duarte*, 101 F.4th 657, 691 n.16 (9th Cir. 2024), *rev'd en banc*, 137 F.4th 743 (9th Cir. 2025)).)

Defendant asserts that *Connelly* held that historical laws prohibiting alcohol use—the closest analogue to controlled substances—while misusing weapons were not common, and there were no laws that prohibited alcohol drinkers from possessing firearms. (*Id.* at 7.) He contends that the Founders chose not to regulate firearms in this context, despite "the social problems created by high levels of alcohol consumption[.]" (*Id.*) Therefore, "the Fifth Circuit rejected the notion that simply using or possessing drugs or alcohol could constitutionally justify a categorical and permanent prohibition on firearm possession—like the one imposed by § 922(g)(1). (*Id.* at 8.)

Defendant says that the historical laws cited by the Government are not sufficient analogues for his possession of cocaine conviction. (*Id.*) The laws cited by the Government deal with forgery and mail theft, which were intended to protect the US Treasury and the postal service. (*Id.* at 9.) He admits that the cited law regarding stolen horses does have a connection to trafficking contraband. (*Id.*)

Defendant again argues that the historical laws cited by the Government are not relevantly similar to his drug possession conviction. (*Id.* at 8–9.) These historical laws do not have the same reasoning (the "why") as "modern laws targeting drug trafficking." (*Id.*) The problems caused by the possession and use of controlled substances are different than the problems caused by horse theft, mail theft, and securities fraud. (*Id.* at 9.)

These differences are more noticeable when § 922(g)(1) is applied to Defendant, because his underlying conviction is simple possession. (*Id.* at 10.) Horse theft is not relevantly similar to simple possession of cocaine and is not a conceptual fit to the modern law. (*Id.*) Defendant argues that even if the Court were to accept the Government's proffered historical analogues, "the Supreme Court has expressed 'doubt that *three* colonial regulations could suffice to show a tradition.' " (*Id.* (citing *Bruen*, 597 U.S. at 46) (emphasis in *Bruen*).)

10

Defendant says that the Court cannot view the historical laws as generally as the Government wishes. (*Id.*) The proffered historical laws here would have to be viewed "at 'a high level of generality' " to be proper analogues to simple possession of a controlled substance, which would "water[] down the right[]" to bear arms. (*Id.*) While Defendant acknowledges that the historical analogue need not be an exact match to a modern law, "courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have accepted." (*Id.* at 11 (quoting *Bruen*, 597 U.S. at 30) (cleaned up).)

Defendant argues that there is a difference between his conviction for possession of cocaine and others' convictions for drug trafficking. (*Id.* at 11–12.) One district court in the Fifth Circuit has granted a defendant's motion to dismiss a § 922(g)(1) indictment because it found that the Government's citations to historical contraband laws were not relevantly similar to modern possession of controlled substances. (*Id.* (citing *United States v. Luna*, No. 2:23-CR-518, 2025 WL 760044, at *5 (S.D. Tex. Feb. 10, 2025) (Ramos, J.).)

Defendant turns to dangerousness, arguing that *Rahimi* rejected the argument that a person could be disarmed simply because they are not responsible. (*Id.* at 12 (citing *Rahimi*, 602 U.S. at 701).) The Fifth Circuit in *Connelly* followed suit. (*Id.* at 12–13 (citing *Connelly*, 117 F.4th at 277).) The discussion in *Rahimi* regarding dangerousness followed a prior judicial finding of dangerousness. (*Id.* at 13.) He argues that the historical surety and going armed laws also deal with prior judicial determinations. (*Id.*) Unlike the laws cited in *Rahimi*, § 922(g)(1) "has no element of a prior judicial determination of dangerousness linked to a temporary disarmament. Section 922(g)(1) *permanently* disarms any person who commits *any* crime punishable by more than [a] year." (*Id.* (emphasis in original).) Defendant argues that the Government has no support for its

contention that drug possession is dangerous simply because drug dealing is often violent. (*Id.* at 14.)

Finally, Defendant says that the Court should not consider his prior convictions of Illegal Carrying of Weapons and Attempted Possession of a Firearm, because prior conduct not resulting in a felony conviction is not relevant for a § 922(g)(1) challenge. (*Id.* at 14–15.)

### iv.  *Sur-Reply* (Doc. 42)

The Government responds to Defendant's citation to *Connelly*. (Doc. 42 at 1.) It says that *Connelly* dealt with 18 U.S.C. 922(g)(3), finding that it was unconstitutional as applied to a nonviolent user who was not intoxicated at the time of the offense. (*Id.* at 2.) The Government argues that *Connelly* is distinguishable because it did not address § 922(g)(1), and did not consider the proffered historical analogues here, statutes providing for felony punishment for those convicted of possessing and trafficking contraband. (*Id.*)

The Government asserts that the cited historical analogues "reflect the principle that severe penalties may be imposed on those who possess items deemed injurious to the public good. Modern drug possession laws are consistent with that principle." (*Id.* at 3.) It says that many district courts in the Fifth Circuit have found that historical contraband laws supported the application of § 922(g)(1) to drug possessors. (*Id.* at 4 (citing *United States v. Garner*, No. 5:24-112-1, 2024 WL 4820794 (W.D. La. Nov. 18, 2024) (Walter, J.) (conviction for possession of marijuana was analogous to historical contraband laws); *Patino*, 2024 WL 5010146 (("The sole conviction on which his § 922(g)(1) conviction is predicated is possession of marijuana."); *United States v. Staeger*, No. 24-108, 2025 WL 605053, at *2 (S.D. Miss. Feb. 25, 2025).) The Government argues that "the weight of authority supports the Government's position." (*Id.*) It presented seven historical analogues, and in *Diaz*, the Fifth Circuit has found a history and tradition based on three

historical laws. (*Id.*) Therefore it avers that it has cited enough historical analogues to establish a tradition of felony punishment for trafficking and possessing contraband. (*Id.*)

The Government acknowledges that *Rahimi* rejected the notion that an individual could be disarmed if they were deemed irresponsible but says that *Rahimi* did not reject the disarmament of those deemed dangerous to society. (*Id.* at 5.) First, the Supreme Court "emphasized that its opinion did 'not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse.' " (*Id.* (quoting *Rahimi*, 602 U.S. at 698).) "The Court ultimately concluded that '[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others.' " (*Id.* (quoting *Rahimi*, 602 U.S. at 700).)

Second, *Rahimi* did not require that disarmament be temporary or that there be "a prior judicial finding of danger." (*Id.* at 6.) The Fifth Circuit in *Diaz* found that permanent disarmament was relevantly similar to historical punishment for felony convictions: capital punishment and permanent arms forfeiture. (*Id.* (citing *Diaz*, 116 F.4th at 469–71).) The Government says "the *Rahimi* Court specifically left open the possibility that the Second Amendment allows legislatures, instead of courts, to disarm categories of individuals deemed to be dangerous." (*Id.* (citing *Rahimi*, 602 U.S. at 698).)

Third, as a drug possessor, Defendant was "necessarily a participant in the drug trade— either as a distributor or purchaser." (*Id.*) "Because the drug trade is so closely associated with violence, there is every reason to believe that someone convicted of possessing drugs poses a special danger of misusing firearms." (*Id.*) The Government says that drug use is associated with violence, and Defendant's drug possession indicates danger. (*Id.*)

Finally, the Government is not asking the Court to consider Defendant's conduct that never resulted in a conviction. (*Id.* at 7.) Rather, it is asking the Court to consider the facts giving rise to the convictions, like his possession of cocaine and a firearm in 1999, and possession of a firearm and marijuana in 2013. (*Id.*) The Government argues that these facts indicate that Defendant is dangerous. (*Id.*)

### v. *United States v. Davis*

On March 31, 2025, this Court issued a ruling in *United States v. Davis*, No. 22-93, 2025 WL 964439 (M.D. La. Mar. 31, 2025). In the ruling, this Court denied Davis's motion to dismiss his § 922(g)(1) indictment, finding that the same proffered historical analogues here were relevantly similar to Davis's convictions for drug possession and trafficking. *Davis*, 2025 WL 964439, at *7. On April 1, 2025, the Court ordered the parties to submit briefing "addressing the impact of *Davis* on this case." (Doc. 43.)

### 1. Defendant's Brief (Doc. 44)

Defendant argues that *Davis* improperly decided that drug trafficking and drug possession should be treated the same under § 922(g)(1), because the Fifth Circuit in *Connelly* found that there are non-violent drug users. (Doc. 44 at 2–3.) Even the Armed Career Criminal Act and United States Sentencing Guidelines treat possession and trafficking differently. (*Id.* at 3.)

Defendant cites to *United States v. Contreras*, 125 F.4th 725 (5th Cir. 2025), where the Fifth Circuit rejected an attempt to analogize possession to historical laws on forgery, counterfeiting, and theft to a prior conviction of "an unlawful user of a controlled substance" knowingly possessing a firearm. (*Id.* (quoting *Contreras*, 125 F.4th at 731) (internal quotation marks omitted).)

Further, Defendant argues that other district courts in the Fifth Circuit have granted motions to dismiss § 922(g)(1) indictments where the prior conviction was drug possession. (*Id.* at 4.) (citing *Luna*, 2025 WL 760044, at *5 ("The Court finds that none of the Government's proffered historical laws are sufficiently analogous to the predicate offense in this case. Therefore, the Government has not met its burden of identifying a representative historical analogue for the predicate offense of possession of a controlled substance."); *United States v. Gomez*, No. 5:24-CR-073-01-H, 2025 WL 971337 (N.D. Tex. Mar. 25, 2025) (Hendrix, J.) ("granting dismissal in a 75-page opinion reviewing relevant precedent and the government's proffered historical sources, and noting that 'the Court's own research uncovered no Founding-era laws that severely punished the simple possession of any type of contraband' ")).)

Finally, Defendant argues that drugs were not regulated at the founding, though drug use was rampant during the 18th and 19th centuries. (*Id.* at 4–5.) The authority cited in *Davis* "overlooks that drug possession by Americans was a part of American history at the time of the Founding. There was contraband at the founding, but drugs were not considered contraband. Nor are all drug possessors violent." (*Id.* at 5.)

### 2.  Government's Brief (Doc. 45)

In its brief, the Government argues that *Davis* is directly applicable to this case. (Doc. 45 at 2.) It points out that Defendant does not argue that *Davis* is inapplicable, but only that it was incorrectly decided. (*Id.*) The rationale in *Davis* regarding public safety applies even more so in this case, because Defendant's underlying conviction was for possession of cocaine and possession of a firearm at the same time. (*Id.*) It concludes, "the facts underlying defendant's felony drug and gun convictions establish that defendant's disarmament is consistent with the historical tradition of disarming those who pose a threat to public safety. (*Id.* at 3.)

15

### B. Law and Analysis

#### i. The Second Amendment and Drug Trafficking

The Fifth Circuit has not yet determined whether drug trafficking or drug possession crimes can serve as a constitutional predicate offense to § 922(g)(1). However, the overwhelming majority of district courts in this circuit have found that they can.

For instance, in *Wilson*, the defendant's "criminal history includes possessing a firearm by a felon, possessing heroin, illegally possessing stolen firearms, and possessing heroin with the intent to distribute it." 2024 WL 4436637, at *4. The district court properly stated that the government had to demonstrate "that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this." *Id.* (quoting *Diaz*, 116 F.4th at 467) (internal quotation marks omitted). The Eastern District looked at the same founding-era laws that the Government currently cites and concluded that the United States demonstrated the requisite tradition:

> The government has carried its burden under *Bruen* to show "that the Nation has a longstanding tradition of disarming someone with a criminal history" analogous to Wilson's. *Id.* To carry that burden, the government relies principally on Founding-era laws criminalizing possessing and trafficking contraband. [ECF No. 89 at 6–11.] And the government has shown that one or more of Wilson's predicate convictions are sufficiently analogous to the cited Founding-era laws imposing severe punishments for possessing or trafficking contraband. Among other "relevantly similar" examples, *Diaz*, 2024 WL 4223684, at *7, the government explains that Virginia authorized imposition of the death penalty for the crime of knowing receipt of a stolen horse, that the Second Congress authorized imposition of the death penalty for the crime of theft of the mail, and that States and the federal government authorized imposition of the death penalty for the counterfeiting and forgery of public securities. [ECF No. 89 at 7 (citing, inter alia, 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819); *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792); *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790); 2 *Laws of the State of New York Passed at the Sessions of the Legislature* (1785-1788) 260-61 (1886); 9 William Waller Hening, *Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature* 302 (1821)).] If capital punishment was permissible to respond to possessing and/or trafficking contraband, "then the lesser restriction of

permanent disarmament that § 922(g)(1) imposes is also permissible." [*Diaz*, 2024 WL 4223684, at *7.] Accordingly, the Founding-era laws cited by the government qualify as "relevantly similar" evidence that "establish[es] that our country has a historical tradition of severely punishing people like [Wilson] who have been convicted" of possessing and trafficking contraband. *Id.* at *6, 7.

*Id.*

The Eastern District also cited "the Nation's longstanding tradition of disarming those convicted of serious crimes indicating that they may pose a risk of violence or other danger to public safety." *Id.* at *5. The district court continued:

> Here, Wilson's predicate felony drug-and-gun convictions reveal that Wilson may pose a comparable risk of violence or other danger to public safety. Congress has long recognized "that drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993) (citing statistics on the percentage of murders relating to the drug trade). And federal appellate courts have acknowledged that "drug dealing is notoriously linked to violence." *United States v. Torres–Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (citations omitted); *see also, e.g.*, *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011) ("[O]ffenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) ("[T]he illegal drug industry is, to put it mildly, a dangerous, violent business."). Accordingly, permanently disarming those, like Wilson, who have committed serious drug-and-gun felonies associated with violence is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

*Id.* The *Wilson* court also cited a large number of cases from around the nation supporting its position:

> Finally, for good measure, courts across the country have held Section 922(g)(1) constitutional as applied to defendants with predicate convictions resembling one or more of Wilson's predicate convictions. *See, e.g.*, *United States v. Jackson*, 110 F.4th 1120, 1125–29 (8th Cir. 2024) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug offenses); *United States v. Canales*, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug convictions); *United States v. Goins*, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate convictions for DUI and drug possession); *United States v. Pearson*, No. 22-CR-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug-distribution and firearm convictions); *United States v. Blackshear*, No. 23-CR-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023)

(same); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug convictions); *United States v. Wise*, No. 21-CR-511, 2023 WL 6260038, at *4–7 (W.D. Pa. Sept. 26, 2023) (finding Section 922(g)(1) constitutional as applied to defendant with one predicate drug-trafficking conviction). Many of those courts reason, as the Court has here, that "guns and drugs" are "a dangerous combination increasing the risk of violence addressed by Congress in dispossessing significant long-time drug dealers of firearms." *Pearson*, 2023 WL 6216527, at *3 (internal citation and quotation marks omitted); *see also, e.g.*, *Reichenbach*, 2023 WL 5916467, at *9 ("There are few crimes that pose a greater risk to the public than drug trafficking, and fewer still where the dangerous connection between the crime and possession of firearms is more present or better understood."); *Canales*, 702 F. Supp. 3d at 321 ("[D]isarming individuals . . . who have shown a proclivity toward drug trafficking[ ] serves the same purpose of protecting the public from unnecessary violence.").

*Id.* Thus, the defendant's motion to dismiss was denied. *Id.* at *6.

Other cases in this circuit have followed suit. In *Carter*, defendant's prior convictions included "possession with intent to distribute 28 grams or less of cocaine, possession of tramadol, and possession of a firearm by a convicted felon." 2024 WL 4723236, at *6. Chief Judge Brown looked to the same three historical laws as *Wilson* and concluded, "the founding-era laws cited by the government are 'relevantly similar' evidence 'establish[ing] that our country has a historical tradition of severely punishing people like [Carter] who have been convicted' of possessing and trafficking contraband." *Id.* (quoting *Diaz*, 116 F.4th at 470). *Carter* also found the same "risk of violence or other danger to public safety[:]"

> Carter submits that his prior convictions for drug trafficking are different than the violent offenses considered by the Supreme Court in *Rahimi*. However, in *Diaz*, the Fifth Circuit held that Section 922(g)(1) is constitutional as applied to an individual previously convicted of theft, which the court recognized did "not inherently involve a threat of violence." [116 F.4th at 471 n.5.] Additionally, application of the felon-in-possession statute to drug criminals aims to address a *risk* of violence. Congress has long recognized "that drugs and guns are a dangerous combination." [*Smith v. United States*, 508 U.S. 223, 240 (1993) ("In 1989, 56 percent of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent.").] "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed." [*United*

18

> *States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024).] "This history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons." [*Id.*] Therefore, the government has met its burden of showing that applying Section 922(g)(1) to Carter "is consistent with this Nation's historical tradition of firearm regulation." [*Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 17).]

*Id.* at *7. Finally, the Court stated that "this holding is consistent with rulings from courts across the country who have addressed the constitutionality of Section 922(g)(1) as applied to defendants with predicate drug possession and trafficking convictions." *Id.* at *7 & n.113 (collecting cases, including *Wilson* and those cited in it).

Additionally, many district courts have applied the same reasoning found in *Wilson* and *Carter* about drug trafficking to cases involving simple possession of drugs. *See Staeger*, 2025 WL 605053, at *2 ("Other courts, including some within this Circuit, have adopted this analogy and upheld § 922(g)(1) as applied to felons convicted of drug possession. . . . The Court sees no meaningful distinction between those cases and this one, but even if it did, Defendant was also convicted of forgery, which was punishable by estate forfeiture or death at the time of the Founding." (citing, inter alia, *United States v. Mack*, No. 24-244, 2025 WL 221808, at *3 (W.D. La. Jan. 16, 2025); *Patino*, 2024 WL 5010146, at *5–7; *United States v. Landrum*, No. 24-63, 2024 WL 4806486, at *1 (S.D. Miss. Nov. 15, 2024); *Wilson*, 2024 WL 4436637, at *4–5; *United States v. Sampson*, No. 24-266, 2024 WL 4418299, at *4 (D. Ariz. Oct. 4, 2024))). *See also United States v. Flowers*, No. 25-10, 2025 WL 726572, at *4 (W.D. La. Mar. 6, 2025) (denying as-applied challenge to § 922(g)(1) where predicate felonies included possession of controlled dangerous substances and battery of a police officer (citing *Wilson*, 2024 WL 4436637, at *4–5; *Carter*, 2024 WL 4723236, at *6); *United States v. Garner*, No. 24-112, 2024 WL 4820794, at *3 (W.D. La. Nov. 18, 2024) (denying as-applied challenge where one prior conviction was possession of marijuana (citing *Wilson* and *Carter*)). *But see Luna*, 2025 WL 760044, at *3, 6 (disagreeing with

*Patino*, distinguishing cases involving "drug trafficking offenses," and "find[ing] that the Government ha[d] not met its burden of establishing a history and tradition of disarming someone with a criminal history of possession of a controlled substance").

### ii. Analysis

Defendant initially moved to dismiss the indictment on the grounds that § 922(g)(1) is unconstitutional on its face and as applied to him. (Doc. 19.) However, *Diaz* ruled that § 922(g)(1) is facially constitutional. 116 F.4th at 473. Therefore, that argument is foreclosed, and the Court will only evaluate whether the law is unconstitutional as applied to Defendant.

As the Fifth Circuit held in *Diaz*, an offender's status as a felon is relevant to the second prong of the *Bruen* analysis, as "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)[.]" *Id.* at 467. "The burden thus shifts to the government to demonstrate that regulating [Defendant]'s possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.' " *Id.* (quoting *Bruen*, 597 U.S. at 24).

For the reasons given in *Davis*, and the above authority, this Court finds that the application of § 922(g)(1) in this case is "consistent with the Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen*, 597 U.S. at 24) (internal quotation marks omitted). As these decisions show, "the founding-era laws cited by the government are 'relevantly similar' evidence 'establish[ing] that our country has a historical tradition of severely punishing people like [Chenier] who have been convicted' of possessing and trafficking contraband." *Carter*, 2024 WL 4723236, at *6 (quoting *Diaz*, 116 F.4th at 470); *see also* Doc. 30 at 6–7 (offering in this case three of the same analogues as in *Wilson*).

The analogues need not prohibit or punish drug possession itself. Rather, "[t]he law must comport with the *principles* underlying the Second Amendment, but it need not be a 'dead ringer'

or a 'historical twin' " *Rahimi*, 602 U.S. at 692 (emphasis added). As amply shown above, the Government meets that burden with the offered founding era laws.

That Defendant has been convicted of simple possession instead of trafficking does not negate the applicability of these historical analogues. The Court agrees with the majority of district courts in the Fifth Circuit that there is "no meaningful distinction" between drug trafficking and drug possession for the purposes of § 922(g)(1) and the Second Amendment. *Staeger*, 2025 WL 605053, at *2. First, the analogues remain relevantly similar, particularly "Virginia['s] authorized imposition of the death penalty for the crime of knowing *receipt* of a stolen horse[.]" *Wilson*, 2024 WL 4436637, at *4 (emphasis added) (citation omitted). Second, as this Court held in *Davis*, there remains a *risk* of violence, as those who merely possess controlled substances presumably obtained the drugs from those involved in trafficking; that is, end users are still ultimately in and an integral part of the drug trade, and obviously necessary to its existence and continuation.

Further, it has long been "recognized 'that drugs and guns are a dangerous combination.' " *Wilson*, 2024 WL 4436637, at *5 (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993)). When viewing Defendant's underlying felonies together—possession of cocaine and possession of a firearm while in possession of a controlled dangerous substance—it is clear that there is a risk of violence from Defendant's drug possession.

The Court is not persuaded by Defendant's arguments regarding *Connelly* and *Contreras*. First, *Connelly* is distinguishable. *Connelly* addressed a challenge to 18 U.S.C. § 922(g)(3), which prohibits an unlawful user of a controlled substance from possessing a firearm. *Connelly*, 117 F.4th at 272. The court found that the Government had not identified any historical laws that prohibited gun possession by users of alcohol (the closest analogue to controlled substance use). *Id.* at 280. This case is markedly different. Defendant challenges § 922(g)(1)'s constitutionality. The

Government cites historical laws on trafficking of contraband, not disarming alcohol users. (Doc. 36 at 6–7.) Defendant was convicted of a felony for possession of cocaine. (Doc. 36-3 at 2–3.) He was not simply a user of a controlled substance with no connection between his possessions of drugs and guns. These differences make *Connelly* less applicable. *United States v. Rose*, No. 21-26, 2025 WL 816248, at *4 n.43 (E.D. La. Mar. 13, 2025) (Vitter, J.) ("*Connelly* addressed the constitutionality of 18 U.S.C. § 922(g)(3), not 922(g)(1)[,]" and "[t]he Court finds the Fifth Circuit decision in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), more analogous and controlling . . .").

  *Connelly* does not "cut[] against the Court's decision in *Davis* . . . ." (Doc. 44 at 3.) Although the Fifth Circuit in *Connelly* said that not all drug users are violent, it followed this statement saying, "[a]s applied, the government has not shown how Paola's marijuana use predisposes her to armed conflict or that she has a history of drug-related violence." *Connelly*, 117 F.4th at 278–79. Here, as mentioned above, Defendant was also convicted of possession of a firearm while in possession of a controlled dangerous substance. (Doc. 36-3 at 2–3.) There is a risk of violence because "drugs and guns are a dangerous combination." *Smith*, 508 U.S. at 240.

  Second, *Contreras* examined § 922(g)(1) as applied to a defendant with a prior conviction for being a user of a controlled substance in possession of a firearm. *Contreras*, 125 F.4th at 727. The Government analogized this felony to a myriad of crimes like treason, counterfeiting, piracy, murder, rioting, burglary, and arson. *Id.* at 731. The Fifth Circuit found that these proffered analogues were too broad to be relevantly similar to a conviction for "an unlawful user of a controlled substance knowingly possessing a firearm." *Id.* (cleaned up). Defendant argues that the Government cited the same laws, and thus its arguments are too broad. (Doc. 44 at 4.)

The Court disagrees. In *Contreras*, the Government cited a wide range of historical laws, and its argument was "premised on the notion that all felonies are created equal." *Contreras*, 125 F.4th at 731. Here, the Government cites laws that are more tailored to the predicate conviction, possession of cocaine. These laws deal with the possession and trafficking of contraband. (Doc. 36 at 6–7.) The proffered analogues do not treat all felonies the same and are more directly applicable to the possession of cocaine. As one district court said, "[n]ot only do the historical analogues share the common purpose of deterring lawlessness and violence, . . . Congress has long recognized 'that drugs and guns are a dangerous combination.' " *United States v. Amacker*, No. 23-89, 2025 WL 1293443, at *5 (E.D. La. May 5, 2025) (Guidry, J.) (quoting *Patino*, 2024 WL 5010146, at *5 (where the district court held that possession of four ounces of marijuana was a constitutional predicate to § 922(g)(1))). *Contreras* does not undermine this Court's ruling in *Davis*.

Therefore, Defendant's constitutional challenges fail. The *Motion* will be denied.

IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss the Indictment* (Doc. 19) filed by Defendant Roger Chenier is **DENIED**.

**IT IS FURTHER ORDERED** that the hearing on the *Motion to Dismiss the Indictment* on July 16, 2025, is **CANCELLED**. A separate order setting the case for trial will be issued.

Signed in Baton Rouge, Louisiana, on July 9, 2025.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

23